at all? Mr. Martin, good morning. I see you reserved two minutes for rebuttal and you can begin whenever you're ready. Good morning. Thank you. May it please the Court. I would like to ask what is your position? What was the contract? What was the offer? What was the acceptance? Judge, the offer in this case was the posted sign that is at the entry of the parking lot. And in parking lot transactions, they operate under the kind of implied and fact theory, which is the objective act of parking is acceptance. And so our theory is the actual contract offer is the posted sign. The acceptance is... Why isn't the offer conditioned on payment? In fact, there's a sign right next to the other one that has a QR code saying pay to park, right? And I know you objected to the district court considering that, but I don't know how you can object to that. In your complaint, you refer to the QR code being adjacent to the sign. So I think it's certainly incorporated by reference in the complaint. So why isn't it conditioned upon payment? There's no price. There's multiple, depending on the duration, could be a different price, right? Depending on how long you're going to stay. Judge, I think there's two elements to that. I think when you post a sign and say it is $6, then I think that is actually... Well, it didn't say it's $6. It had various times, depending on how long you stayed, right? The price was uncertain. Agreed? It is certain in terms of what the stated rate is. And you're correct, Your Honor, it is a rate. So it's $6 for four hours and then continues beyond that. But that is the rate. And so to actually charge more than that is increasing what the rate and the cost of that transaction is. So if I pull into the lot, you're saying as soon as you park, you've agreed to the contract. Is that your position? Yes, Your Honor. So I pull into the lot, I walk over to the sign, I read the sign, $6. I'm like, you know what? That's too much money. Did I enter into a contract because I parked for like a minute in the lot and walked over to the sign? Is that your position? In paragraph 62, we do assert that individuals who park but do not pay are pursued in collections for unpaid sums. So what are they pursued for? Are they pursued for the $6.37 or for the $6? Our understanding is that they're pursued for the posted rate, the $6. The posted rate without reference to the service charge. And in fact, it's the amount that they've been there. And so one of the issues I'll get to in a moment is essential terms and whether that information is necessary. Well, that's a question that I think is important for the other side, at least, to be asked. If their contract is $6.37, but if the person doesn't pay, they're not going to go for the $6.37. They're only going to go for the $6. There has to be a legal basis for them to do that, right? And that's your point, that it's a contract at $6. I think everybody agrees it was a contract. The real question here is what was it? What was the offer? What was the acceptance? The facts we've alleged in our complaint, Your Honor, are that the act of entering the lot and parking are the acts that form the contract. And so... Now, you have authority for that, but what about the, is that, that may be true where they're saying it's like $1.50 an hour. And then, you know, it's, the person is, enters, parks, and at that point becomes bound to pay the $1.50 an hour, right? And so you're saying, I guess, and I'm kind of going back to the price question, that the price is never really spelled out. The final price can't be known until the person leaves and then pays whatever the calculation is upon the rate that is specified. Well, Judge, I think that's a detail of the transaction that is determined. The essential term is the rate that is agreed to for the transaction. And so entering the lot with the posted rate of $6 per 4 hours and the overall rate that does extend beyond 4 hours, that is the essential term of the rate. And so in Franklin, it was $1.50 per day. And so the per day inherently kind of assumes you could have multiple days. And so it is still the rate being imposed here. And I think one of the critical things here is the district court analyzed the case under a unilateral contract theory where the performance is the acceptance. And that was something that is pled in the complaint. And the case law we've cited is that when you have alternative theories, both theories must be addressed. We're asking that the implied and fact theory be applied here. That is what we've alleged. One of the critical elements is that we have alleged that Ms. Harris parked under the $6 rate and then she was charged more. And that's a very important distinction, I think, from what the district court was concluding under the legal standard here. The legal standard is that the facts are taken as true and the reasonable inferences are drawn in Ms. Harris' favor. And yet the district court had made conclusions that the fact remains that she did, in fact, choose to pay $6.37 rather than $6. And I think that is a conclusion. Why was that incorrect? Why was that wrong? Judge, in paragraphs 40 through 42, we describe the specific transaction as to Ms. Harris. It was not that she chose to pay the $6.37. She agreed to the $6 but was charged $6.37. And she paid it. And through the transaction, it was charged to her. That's what she paid. But she could have gotten her car and driven off at that point, right? Under paragraph 62, an allegation is, is that as part of the transaction, individuals who park but leave are actually pursued in collections under the contract that's formed. Well, it's an objective, both the district court and your adversary point out, and it's an objective, not a subjective standard when we look at a contract. So what they may think or do on the opposite end doesn't necessarily control. I understand the point. But I just want to go back to this idea that somehow she wasn't deceived when she paid. It said $6.37, right? It wasn't like the $6.37 got charged to her car without her knowing it. You're not claiming that, right? It was in paragraph 108. She saw that it was $6.37, right? One of the elements that I think is an aspect for discovering this case, in paragraph 108, we say that it was hidden. And that is part of the transaction here, which... So when the charge... Is that correct? We believe it is a breach of contract for a party... The ultimate price shown did have the service fee included. $6.37. And at that point, she could have said, forget about this. I don't want to pay the $0.37 and driven off. And one aspect of our complaint, as I've just identified, is that that was actually a kind of a hidden component, which is why we've alleged the bait and switch. How is it hidden? She knew it. The basis for the charge, the imposition of the charge, was not actually displayed. And that's going to be, you know, something that we believe we're entitled to discover. Explain that to me. I'm sorry I didn't quite follow that. You said the imposition of the charge was not explained to her? The rate that was shown was $6. As part of the actual transaction, what was put into it was an additional charge. The notion that she... I think that that's an open question because... I'm not going for the $0.37. I think under the facts alleged that our allegation is that no, is that actually people who park but do not pay are pursued for a rate. That's a different question, though. You're trying to artfully bleed around this critical issue, which I don't think you can do. You have to plausibly allege, if it is an important part of our analysis, you have to plausibly allege that she did not know she was paying $6.37. It can't be that, like, well, we're going to get discovery on that. You have to plausibly allege that she did not understand that she was paying $6.37. You can't just say it was hidden because I don't know what you mean by hidden. What do you mean by hidden? I don't know what hidden means. How is it hidden? Well, it is hidden... I thought you just said a minute ago that she knew she paid $6.37. Didn't I hear you just say that? She was charged $6.37. It was not... She didn't know she was paying $6.37? Is that what you're telling? Our allegation is that she did not voluntarily pay a service charge. She agreed to and was charged... You're changing the question. The change is not whether she voluntarily agreed. The question is, did she know she was paying $6.37 or not? That's a really basic question. What's the answer to that question? At this point, I don't... I think that, no, she did not understand that there was a $6.37 surcharge being applied to her transaction. Was that... The agreed rate... Why was that? I mean, was that because she just needed to get her car out and she just paid whatever they said to pay? I think there's an element... Was above the rate on the signage? I think there's an element when, of a consumer transaction, when the posted rate is $6, that is the expectation of what you'll be charged. That, in this case, the allegation that we believe we've plausibly alleged is that she agreed to the $6 rate. That is the rate that should be imposed for the contract. When did you first see $6.37? That would be through the payment aspect. And so under what we've pled, you have the contract formed under our theory in which she fulfills the obligation. Help me understand this independently of your contract theory. So I'm driving in. I see this sign. First four are six bucks. So then I go to an empty stall, right? What do I see next? The allegation is that there is a QR code posted.  Near the stall is...  Yes, Your Honor. Okay. And so when do I have to engage the QR code? So at the parking, there's many people who do not, and they are charged the posted rate. For Ms. Harris, we've alleged that she used the QR code, and that prompted the ability for her to pay electronically. Okay. So she engaged the QR code, and the QR code said, using your credit card data or whatever it is, you're paying $6.37. It, as we've alleged, it populates the price, it populates the charge, and she clicks pay. And so that's what we've said is... Okay, so if she didn't want to pay the $6.37, she had the option not to push the button? In one aspect at this point... Did she have the option not to push the button? Simple question. Our allegation is that if she left the lot after she parked, she would have been charged the contract rate of $6. She had an option, though. She didn't have to... Once she saw the $6.37, she didn't have to press the button? I think that she was obligated to pay the $6. The only choice... Once she passed... Don't ask the answers. The question is, was she required to pay the $6.37 or just the $6? I think through the procedure put in place by last parking that we have alleged is wrongful, she was required to pay the $6.37 because that's what she was charging. If she didn't press the charge button, did she get charged? Did the charge hit her credit card? Our allegation is that she would be pursued in collections. I'm not asking what your allegation was. I'm asking what the good faith basis you have for making these allegations is, whether you've made a reasonable investigation of the facts. So if she did not press the charge button, what happened? She would not have paid for her obligation to pay the $6 for the parking transaction. So that was the only means of payment available to her after parking? Yes, Your Honor. The QR code was the only available method. There was no gate that she went through or any other charging agent there to pay or anybody else? Correct, Your Honor. There was no other method to be able to pay. All right. Thank you. Thank you, Your Honor. Well, I have one further question. You make a point that there are terms and conditions that last parking has. And one of those terms and conditions are that there are no service fees. And I don't understand that. But here there are service fees. But the terms and conditions say there aren't. There aren't service fees. Yes, that's an alternative claim we've pled. The allegation is, is that through the payment system, there's terms and conditions that are applied. They're made part of the agreement. We believe that a contract was already formed. But if not, the terms and conditions do say that LAS will not charge you for any parking fees or services provided. Does that leave a question as to whether that's part of the contract or not part of the contract? Does it create ambiguity in the contract? I think ultimately the formation questions for both the initial set of her parking and the terms and conditions are questions of fact that should be resolved. I think ultimately the allegation is, is that the terms and conditions were imposed upon her. They are one and the same in terms of what the system and the services are. No, no, no. The system that said the following terms and conditions govern your use of the online parking reservation system, and then it describes the service as clearly one where they're helping you locate a spot, right? I mean, I don't want to read the whole paragraph to you, but it's clearly talking about the availability of a specific spot in the location that you want to go. That's what the terms and conditions say they refer to, and that's not what your client was doing, right? Well, Judge, I think the district court had even read this as saying it's part of the booking process, and I think for us the key element for our allegation is Lazz's parking actually imposed this payment system upon her. Ms. Harris, the system here, the service, is actually what Lazz's parking, as factually alleged, is imposing on her. Was your point? Well, my question is twofold. Is there an ambiguity to the contract, and if the ambiguity is resolved in Lazz's favor, is that appropriate for a motion at the motion to dismiss stage? And then finally, if that contract does have that no further terms and conditions, does that create a no further service fee? Does that create a, you know, where does that leave us? Well, I think, Judge, if there's the alternative claim and the terms and conditions are contracted apply here, as we've alleged, then that would be an issue where it would be a misrepresentation in terms of what was made, in addition, a breach in terms of charging a service fee when it was said not to. Was your client using the online parking reservation system? As we've alleged, that they are one and the same. There is no distinction. It says the service provided, this is the terms and conditions, pursuant to the system, is limited to, this is what it defines the system as, informing users of the location and the potential availability of parking spots. And it talks about these third parties where you would park at. Clearly, your client was not using the system to locate the potential availability of parking spots, right? There's nothing in the complaint that suggests that your client was using that service, right? I think it's an open question about what online parking reservation system is, and that was what- Well, they define it in the next sentence, informing users of the location and potential availability of parking spots. And as we've alleged, the process that was actually put on her through the system being described here is what charged her the service fee. That is what we've alleged. All right. Thank you. Thank you. Mr. Sherin? Good afternoon. Good morning, Your Honors. My name is James Sherin. I represent the Defendant Cowleys. Let me first address Judge Parker's question. With respect to paragraph 62, the question the court asked was what happens if she leaves. There is no allegation in this complaint that addresses that scenario. Paragraph 62 talks about when she stays and doesn't pay, not when she leaves and doesn't pay. And that's the problem, because this entire case is based upon an online parking system. Paragraphs 23 through 32 speak specifically to the uniqueness of this parking lot, where there is no agent. There's no one to turn over cash to and say, I'm parking for four hours or I'm parking for eight hours. You have to go with the parking, the QR code. You do, sir. Absolutely. That's the allegation in the complaint. It must be used on an online system. What is your view of the contract? Where is the offer? Where is the acceptance? The offer is, well, we argued that the offer was when Ms. Harris inputs her information into the online system, to which she is directed. This is after she's physically parked. That's where the contract begins? Yes, sir. She pulls into her stall. I don't understand that. Let me, if I may, Your Honor. Go ahead. She pulls into the stall. She looks at the sign. It says $4 for six hours, $8 for, sorry, $6 for four hours, $8 for so-and-so. She is then told, as the plaintiff's alleged, to input information into the online system. That's the only way this parking can be accomplished. It's what the plaintiff alleges. She inputs her personal information and her financial information, and she says, I'm going to stay here four hours, not eight hours. The system populates the allegations of the complaint. The system populates the price based upon the information she provides, and in this case, added 37 cents. To the court's questions, she looks at that. She sees $6 was my four hours, and 37 cents is this charge, and I click pay. So if she parks, looks at the online system, the payment system, and at that point decides to leave the parking space, can she do that? Yes, sir. Is she charged in anything? I'm sorry? Is she charged in anything? No, and there's no allegation, Your Honor, that she is charged in anything. I want to make sure this is clear. So you put your credit card information and your Gmail or whatever they're asking for, and you see instead of $6, $6.37 pops up. Yes, sir. At that point, in order for that transaction to go through, you have to hit the other button that says agree. If you don't want to do that, you can put your car in reverse, pull out of the parking lot and go home. Is that true? That is absolutely correct, Your Honor, and more to the point, there's no allegation that says that's not true. But would your client take the position if she stayed for an hour and parked there, never paid, that she breached a contract? Would your client take that position? Even though it didn't involve any payment, would your client take the position that the act of parking there for an hour created a contract? Your Honor is referring to paragraph 62 of the complaint where the plaintiff alleges that that contract would have occurred if she had stayed. Well, first of all, the allegation is on information and belief. Secondly, the answer, Your Honor, is no, we don't do that. Let me give you an example. Well, let me ask you this. So I see the agree button. I don't press it, but I stay there all day. What happens? Well, under the plaintiff's theory, paragraph 62. Well, it's a practical matter. What happens? It's a practical matter, Your Honor. The parking lot, the LAS, does not chase these people. The what? LAS does not pursue these individuals. Well, that's not subjective. They come in, they park for six hours, and they leave and they don't pay. That's the end of it. LAS washes their hands of it. That's okay. As a practical, Judge Parker asked me as a practical matter, Your Honor. As a practical matter, that's what happens. And I'll give you an answer. I thought it was a legal matter. I suppose there was another company that wasn't as nice as LAS and decided to pursue someone who did that. Would that be a breach of contract claim?  Sure. They occupy the space for a certain amount of time, and they owe money.  Let me ask you this. What is the contract? And at that point, there's no payment system invoked. The only contract, presumably, is what your adversaries are giving as an implied contract, six bucks an hour. Six bucks for four hours. I didn't mean to interrupt, Your Honor. That assumes that we would be pursuing that customer on a contract-based theory. Right. It doesn't have to be the case. We could pursue them for trespass. Could you do that? Of course. They entered onto the lot. They occupied space. They were not entitled to occupy unless they paid. They nonetheless didn't pay. We would have a cause of action for at least trespass. What is the service, the $0.37 for? What service is provided? It's the online system. It's just processing this online, Your Honor. It's an administrative cost that you want the customer to pick up? Yes, sir. I see. Yes, sir. So the Franklin case that they rely on, I think, if that case is correct, and the FTC also agrees with the Seventh Circuit, the key distinction here is not necessarily the use of the payment system and the QR code. It's that the duration is variable. Right? So if your sign here said one rate, $6, no matter how long you stay, you would agree that at least the Seventh Circuit would say that a contract is formed once you park. Right? The only caveat I would add, Your Honor, is that I would suggest that both issues are still in play, that is both the use of the online system because it is the only manner of payment methodology and the duration. You're absolutely correct. But Franklin didn't seem to focus on the method of payment. It just seemed to focus on the fact that it was a fixed flat rate. Right? That's exactly correct. The Court did not answer the question that's posed before this Court, which is when the customer is required to use an online system and input this information. You're saying, frankly, we don't know if it was an online system or not. No. Franklin was a meter. Pay at a meter, Your Honor. That's what the factual allegations or the facts in that case were. If I might, just in passing, and I don't mean to leave this question, this issue, if you still have questions, Your Honors. No. Can you address the terms and conditions issue? Yeah, sure. I don't have much more to add than what Your Honor obviously pointed out. The definition of system and service is specifically set forth in the terms and conditions. The service is restricted to finding spots that you can park at and booking those spots. It has absolutely nothing to do with payment. Zero. That's what you're saying, but is that clear from the terms and conditions itself? I mean, my concern here is that this seems to be a bit ambiguous when the terms and conditions say you don't have a service charge. I recognize that the preliminary of that is what Judge Bianco pointed out, but it seems to me that there is a possible interpretation that there's a conflict between no service charge there and this later service charge, which is for an administrative fee, and whether that's clearly established as an administrative fee, as a contractual matter. Your Honor, with all due respect, I don't know how you can read the two pages of the terms and conditions at Appendix 95 and 96 and conclude that it's addressing a service fee in connection with actually parking at a spot, having pulled in and decided how long you're going to park. It has absolutely nothing to do with the facts that are alleged in this case. Why would she ask to quit this? If this contract, if this terms and conditions have nothing to do with what she's doing, why is this part of her purchase? Well, that was Plato's allegation, not mine, Your Honor. This is not displayed or it's not accessible to her when she's not doing her job? The allegation in the complaint, Your Honor, is that when you go onto the online system and go through the menu of exercises, you agree to the terms and conditions. The terms and conditions go well beyond what's at issue in this case. The plaintiffs are simply pointing out, or the plaintiff is simply pointing out, what Judge Walker is talking about, which is this service fee, and I submit that when you read those two pages, there is no way you can conclude that that service fee has anything to do with the 37 cents that's at issue in this case. So it's not a matter, as far as you're concerned, it's open and shut and not a question that needs to be decided by a fact finder? It's not only my opinion, Your Honor. It was the judge below's. Well, you're arguing. You agree with the judge. All right. Thanks. Thank you, Your Honor. Mr. Martin, you have two minutes. Thank you, Your Honor. I want to touch on the discussion that was just made of, could a contract action be brought against someone who parked but did not pay? And I think the answer we heard from last parking is, well, sure, someone else, another company could. They occupied the space for a certain period of time. And I think that that is essentially recognizing the very theory that's pled here. And I want to point to paragraph 62. There's a difference, though, because at that point they've stayed there for an hour or whatever it is, and so by performance you know the duration and how much they owe. Whereas here, when she accesses the QR code, she has to state what her intention is at that point. Isn't that a big difference, that the essential terms for your client are unknown, whereas the person who stays there for X period of time and doesn't pay, we now know, right, by performance. Well, Judge, in that scenario, there is no access to the QR code. There is no payment. It is the act of parking, which those two are implied in fact here. I understand that, but the act of parking fills in the essential terms that your client didn't have, the essential terms, because she hadn't done anything yet at that point. And could have left, as Judge Parker has pointed out, multiple times. I think it would be a different scenario if someone pulled in and immediately pulled out. In this case. Pulled in, accessed the QR code, saw the button agree, didn't want to do it, pulled out. Was there a contract in that scenario? Well, I think that the act of parking is the objective act of assent, and so no. My point is that an obligation arose when she pulled in. An obligation to pay what? $6 or $6.39? The posted rate. $6 or $6.39? $6, Your Honor. Do you understand what you're arguing? All sorts of services are provided to people where this, I mean, if you walk into a candy machine, I press B1, right? And the price comes up, and I walk away. Your position would be, well, you selected B1. You owe that money, right? Even though I decided not to pay once the price came up. I think that a lot of other transactions are kind of unique to their own scenario. I think in the parking lot space, it's a very unique situation because it is the posted rate. It's a situation where you have the posted amount. I think under the vending machine, if you select a button and you, it says that the candy bar is $1, and you say, okay, and you go to pay, and they charge you $1.50, then that is an issue. But that's, I think, in this instance, what I want to point to is on paragraph 62, I think there's been, for last parking, characterizing this allegation as some sort of temporal, like you need to stay for an hour to manifest assent. And that's not what paragraph 62 is going to. It says, LAS has collected parking fees from customers who park but never pay. And so it truly is the active parking that is the objective manifestation. So I pull in. Five seconds later, I access the QR card. It says it's 639. I said, you know, bait and switch. I'm not buying this. I put my car in reverse and start out. Your position is that she owes $6 for that? Our position is, is if she actually parked. She parked because she couldn't access the QR code if she were moved. So she moved into the lot, rolled down the window, accessed the code. It says 639. She says, I'm not buying in. I'm backing out. Your position is that that exercise obligates her to pay your client $6? Yes, Your Honor. Yes, the active parking. And I'll say, in many instances, the entering of the lot and parking, and if you turn around and leave and 30 seconds later, you are paying that meter for being in that parking spot. So your position is that she's obligated to pay the $6 but not the real price, which is 639? She is obligated to pay the contract rate. That is the amount that we have alleged is what is ultimately pursued. I'm sorry, say that again. The contract rate of $6 for four hours is what is pursued as the collection. What does she owe, $6 or 639 in this scenario? She owes $6. Let me ask this question. Is it possible, it seems to me that different constructions can be made on various aspects of this. Is it possible that there are two contracts here? The first is a contract to park, and the second is a contract to pay using the QR code, in which case, if you accept that contract, that you must pay the 37 cents on top of the fee. But if you don't use the QR code, your rate, because the system hasn't been invoked, is $6, and there's no service vis-a-vis payment or QR code or payment system, then that would be a $6 contract. Is that a possibility here? I think we have pursued the payment side as an alternative claim. Our primary theory is that once the contract is formed, that there can be no additional charge made. And, in fact, it is a breach to overcharge because those terms control. There's no new consideration. Ms. Harris, when she parked, already had the ---- So you're saying that the payment system is subsumed within the contract that you described, which is just the straight fee posted at the parking? Correct. It's actually the obligation to pay. It's the means to fulfill that obligation by Ms. Harris. When she entered into that system, she's fulfilling a contractual obligation that was imposed on her. And your point is that because she's forced to use the QR code, she has no alternative but to pay that extra $0.37. That is correct, Your Honor. All right. Thank you. Thank you, Your Honors. Have a good day. Thank you.